We'll hear argument next in Case 20-5279, Wooden v. United States. Mr. Kedem. Mr. Chief Justice, and may it please the Court, as its name suggests, the Armed Career Criminal Act singles out the most intractable offenders for the harshest punishments by requiring three qualifying offenses, quote, committed on occasions different from one another. That phrase does not apply to defendants like Mr. Wooden, who commit their crimes in a single criminal episode. Some courts have treated crimes as distinct occasions whenever they're committed sequentially rather than simultaneously, but the government does not defend that rule. Instead, the government would ask whether the final element of each offense was satisfied at the same instant, creating a simultaneity test on steroids. Even the robberies in petty would flunk that test. And the government would tack on yet another requirement, that crimes must be factually congruent or intertwined as well as simultaneous. Rather than adopt the government's untested, hyper-technical approach, this Court should read the occasions clause as it would be understood in plain English. Mr. Wooden's mini-storage break-in was a single occasion involving ten burglaries. I would welcome the Court's questions. You seem to define the occasion as a distinct criminal opportunity. How would you analyze that? Sure. So I think the question is whether it's its own criminal episode. Meaning that in order to show that there are different occasions, the government would have to establish some sort of discontinuity or clean break between them. Now, for purposes of this case, it suffices to note that an occasion is not an instant. The fact that Samuel Petty and his associates paused for moments in between grabbing the goods of their six different victims did not mean that the robbery in the diner was six occasions. Well, how much time would have to pass or what would have to happen to break the occasions up to satisfy you? Sure. So it's not solely a matter of time or even preliminary or primarily a matter of timing. Really, it's a qualitative assessment where at a minimum, you know that if all you have is a continuous stream of criminal activity, as in Petty and as in this case, you know that you have the same occasion. For instance, there was never a moment when Mr. Wooden and his associates were not committing burglary once they entered the structure until they left it, in the same way that there was never a moment that Samuel Petty and his associates were not committing robbery until they left the diner. But you're still not getting to the point. What if they took a smoke break? What if they decided to have lunch? What if they said, look, it's time. We've got lots of time. We can go to Starbucks, grab a cup of coffee or something like that. Actually, dunk a donut or get a cup of coffee or something. And they stay for an hour or two. Is that enough of a break? I'm just trying to figure out what you think a break would be to break up the continuity. Sure. And just to be clear, break is perhaps one way that you could have an intervening event. It's not the only one. I think the question is whether, taking into account all the circumstances in the context, you have the sort of discontinuity where the underlying circumstances has changed. And if you're talking about an activity, for instance, that lasts a matter of hours, a few seconds or minutes in between is almost never going to be described as a new occasion. But, Mr. Kedem, you answered, Justice Thomas, first by saying it's not only or even primarily a matter of time. And then within two sentences, you said the question is whether there's a continuous stream of activity, which does seem like it's a matter of time. So isn't it at least primarily a matter of time? No, Justice Kagan. And just to be clear, what I'm saying is that if it is a continuous stream of activity, then you know there's no discontinuity almost by definition. That is not to say that the thing you are looking for is whether it's continuous solely. You could, for instance, be looking for an intervening event of a certain type to change the circumstances and arrest something like that. So timing does play a role, but it's not necessarily the primary role. I think what Justice Thomas might have been responding to is just a feeling that this is a very loosey-goosey test, you know, that it's an all-things-considered totality of the circumstances. We don't even really quite know what we're supposed to look at to decide whether something is an occasion or, take your synonym, an episode. And so, you know, what would your response to that be? That it's just, you know, the words you use in your brief, a juncture of circumstances providing conditions that are favorable for related activities or events, I mean, how are we supposed to know when that happens? So admittedly, it is a qualitative standard. I do think that the statute actually calls for a qualitative standard textually, and that's from the phrase, different from one another, which is just not a phrase you ever use to refer to things that are discreet, like times of day. For instance, you would never say, last month I drove into work on 20 days different from one another, because all days are inherently distinct. You would just say, on 20 days. When you say different from one another, you're referring to something that may or may not overlap in a qualitative sense, like circumstances. To your question, how do you figure it out? Admittedly, it is going to be context-specific, which means that you're not going to be able to necessarily come up with the all-inclusive test that is going to resolve every case. I think it's notable, though, that the courts of appeals that apply a circumstance-based approach have come to relatively consistent results. The government doesn't identify any two cases on similar facts that come to different answers to the question. Alito This seems to me to be a nearly impossible question of statutory interpretation, because the term occasion does not have a very precise meaning. It does seem to refer to events that occur at different points in time. That, I think, has to be a minimum requirement. If three crimes are committed simultaneously, a bomb goes off and kills three people, that's one occasion, even though there are three murders. But beyond that, I find it very difficult to determine what additional meaning the I don't fault you for your efforts, but they leave me scratching my head. I don't know what they mean. You use the term criminal opportunity. I have no idea what a criminal opportunity is. Let me give you some examples. A streetlight goes out, and a mugger says, aha, this is a criminal opportunity. I can now mug people who walk by here at night. And that person does that at 10 o'clock at night, 11 o'clock at night, midnight. Is that one criminal opportunity or three? That sounds to me like the same episode and opportunity. The mugger is essentially Why is it the same episode and opportunity? So just taking the facts as you've stated them, I don't think that the government would be able to show, for instance, that the mugger wasn't just exploiting the opportunity to mug whoever was walking by. And what if the mugger did it on Monday, Wednesday, and Friday? So that really does sound like it's a different episode. You're talking about an activity that at last, at most lasts a few minutes. What if it's Monday, Tuesday, and Wednesday? That still sounds like different episodes to me, not knowing anything additional about the case. But, Justice Alito, you know, I think, may I respectfully suggest that because this is the Court's first attempt to construe the occasions clause, that you don't need to go too much further than to say, in a case that is indistinguishable in all relevant respects from Petty, the one thing that we know that Congress was trying to ensure, in such a case, you know that it's the same episode. Well, Petty is the root of the problem, or Congress's, the Solicitor General's error in Petty, and then Congress's response is the root of the problem. Let me give you another example. A person goes for a job interview and is interviewed sequentially by three people, and later the applicant, after being denied employment, sues for disability discrimination and is questioned. And the questioning goes like this. You were interviewed by three people, A, B, and C. On which occasion were you asked whether you had a disability? Would that be an improper use of the English language? No, because the way that you have phrased it, it's clear that you're just asking which of the three. Now, let's put this in the words that the statute uses. So if you were to say, you were interviewed three times. Was that on the same occasion or on occasions different from one another? Assuming that it was the same inquiry, you would say that was the same occasion. And that's essentially what we're dealing with in this case. I think that hits it on the head. So it depends on the purpose that the person has in mind in using the term. I would say that it depends on the precise phrasing that you use, and the phrase different from one another, I think, hints at something that either may or may not be true. The same statute that enacted the Armed Career Criminal Act also created the Sentencing Commission and charged it with responsibility to identify guidelines for offenders who deserve higher sentences because they committed more than one crime, quote, on different occasions. And from the very first set of guidelines, the Sentencing Commission has always chosen a qualitative approach, relying on things like intervening arrests. Well, qualitative what? What ultimately are we looking for? I think to say we're going to look at the totality of the circumstances is meaningless unless we know what we are looking for in these totality of the circumstances. So what are we looking for? So I think to look for the same or different episode, you are looking for a discontinuity or clean break, and it's obviously the government's burden to establish that. And the context will tell you a little bit about what considerations are relevant. Well, let me just ask one more question and I'll stop. When you say a clean break, why is a clean break the key? I think the phrase different from one another, it's a peculiar... And what does it mean? What is a clean break? How long does it have to last? So, again, it's not solely a matter of timing or even necessarily primarily. I think it can depend on the circumstances. Someone who is arrested and then goes back out and commits a crime even 20 minutes later, that is a clean break. That person has been incapacitated. There's the formal involvement of law enforcement. But that is just a world away from the vast majority of cases. And take, for instance, Mr. Wooden's 97 mini storage break-in and his 2005 burglary. That is the typical way that this arises where there's essentially no argument that there's a continuity between the two. Is overnight always a clean break? So the courts of appeals, so candidly the courts of appeals that apply a circumstance-based approach have said essentially that if there's a day's separation, I don't know about overnight, but a day's separation, they have generally treated that as enough of a clean break. Now, I was going to say I don't want to necessarily endorse that, but that is the way that they've handled it. So my question is this qualitative assessment is necessarily fact-laden, and that provokes a Sixth Amendment problem. So how should we think about the Sixth Amendment problem in interpreting the occasions language? So any concerns under the Sixth Amendment come from a feature of the case that I think is common ground between us and the government, which is the fact that we're dealing here not with some hypothetical or generalized crime, but the way that the defendant's crime actually unfolded. And even on the government's test, and certainly under the test applied by the courts of appeals, you're going to need to know things like what day, what time of day, who was involved, how did the crime unfold, was it in the same place or different places. And, you know, our amici I think do a good job pointing out why this is in serious tension at a minimum with the Court's Sixth Amendment jurisprudence. We don't have a Sixth Amendment claim, and because Mr. Wooden's case is so clearly outside the scope of the statute, I would respectfully suggest that it's not necessarily for the Court to get into that. Roberts. Counsel, going back to Justice Alito's hypothetical about the streetlight, if I understood your answer right, you're saying if the streetlight goes out and the individual thinks this is a great opportunity to mug people and he lies there and mugs person after person, you call that one occasion, right? That's correct. Okay. What if what makes it dark is that it's a moonless night? He says, good, the moon is not out tonight. It's dark. I can mug person after person. One occasion or multiple occasions? I'm sorry. You're saying on one evening? Yeah. It's one evening, and he has an opportunity because the moon is not out. That sounds like one occasion to me as well. Counsel, I want to go ahead. I'm sorry. Go ahead. One notable feature of this case, which also makes it very light petty, is it's not just that the crimes were continuous, it's that the same activity went to all of the crimes. There was a single entry point into the mini storage facility here in the same way that there was a single application of force in petty. And I think that's another case where it's very clear that what you're dealing with is a single occasion. I want to resist the proposition that occasion is used to mean opportunity here. When occasion means opportunity, it's I had no occasion to consider that question. I think occasion in this statute gets closer to something else you've said, which is more like event. Like a wedding was an occasion that was a lovely occasion. But I think it's difficult, let's say it is a jury question, to figure out how the jury instructions are worded to let the jury know when this event begins and when it ends. Because if I talk about a wedding, if I talk about an anniversary dinner, I mean, it's obvious because it's united by a particular purpose. In the context of criminal activity, it's not so clear. So admittedly, it's not always clear. But let me read to you an analogy in the RICO context, because it's actually not that unusual to have this sort of relatedness standard in the criminal law. So under RICO, you need to point to a pattern of related criminal activity. And this Court has pointed, among other things, to, quote, criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. Now, admittedly, that's not identical necessarily to what you would be talking about in the ACCA context, but it's qualitative and multifaceted in the same way. Other states actually also have recidivist statutes where they charge juries with determining whether crimes were committed on the same occasion, and they use pretty similar language. Arizona, for instance, has one of those. Suppose that there was a crime boss, and he was a good multitasking crime boss. And he had a few phones in front of him. He's sitting in his office one day, and on one phone, he's arranging a sale of illegal drugs. And on another phone, he's ordering the killing of a competing crime boss. And on another phone, he's involved in an illegal gambling operation. And they're all going on very close in time to each other. Single occasion or three occasions? So I would say that that's a single occasion, but I can understand how if you decided that the thing that was important was that the crimes had essentially no relationship whatsoever to one another. Yes. I mean, that's what it's supposed to be. The crimes have no relationship to each other. So I would grant you that a lot of people, I think, would look at that and say, those are three different occasions. And that actually gets to a feature of the government's test that is a little bit underdescribed, but I think problematic along the same dimension. Well, before you do that, I mean, isn't that to say then, I mean, what you're really saying, your test, is that there is this very important timing aspect, which is that a substantial break in time between offenses is pretty nearly dispositive. But when the offenses are close in time, then you have this more qualitative inquiry where you're looking at the nature of the crimes and who the victims are and, you know, things like that. So I think you could describe the test that way. I suppose I wouldn't put such emphasis on timing. I do think that in most cases, because offenses will be separated by years like Mr. Wooden's 2005 burglary, that will probably be sufficient for the vast majority of cases. I think for this case, it suffices to say that the phrase occasion doesn't solely refer to things that overlap temporally and certainly doesn't refer solely to the instant at which the final offense element is satisfied. And that's really all you need to know in order to decide this case. What would the result be in this case if the falling happened? Mr. Wooden breaks into the first unit and steals goods inside. Breaks into the second unit and not only steals goods, but then sets the unit on fire. And then while breaking into the third unit, the owner shows up and Mr. Wooden kills him. Is that one episode, one criminal opportunity, one occasion? That would be one very serious criminal episode. And I think it's important to emphasize that the occasions question is not a question about how serious the offenses are. By hypothesis, all of these are violent felonies or serious drug offenses. And you could have the most horrific crime that because it all happened at once, like a bombing, it is only a single occasion. No, I understand that. But I think you were saying a few minutes ago that it matters whether the offenses of the example of the crime boss, it matters whether the offenses are different or whether they are separate or different offenses or whether it's three offenses of the same kind. So I think that's correct. But as I understood your hypothetical, you were talking about a situation where someone was essentially just going from room to room and committing additional crimes as they appeared to the person based on the fact that this was flowing from one to another. In other words, each crime was essentially facilitating the others, which is another feature both of this case and the Petty case. Counsel, and Justice Alito pointed to this earlier, because even in his example of simultaneous, I'm not even sure what that means. Because if you have someone who throws a bomb and kills three people, you could say that's simultaneous. But how about if they're in the room, throw a small bomb, kills three people, and then robs them? Right. All right? So I have a question. Have you given, and no one's actually addressed this at all or alluded to it, is this so vague and so incapable of rational application? Because even the government's proposed test suffers from its own set of vagueness, what happens when things overlap, okay? And how do you determine when the last element was committed? Because a kidnapping lasts until someone flees. So does that mean if you kidnap someone and rape them and do all these other things, is that one episode or not? I think they would say not, but I'm not sure why. But having said that, is there any answer to my vagueness point? So I don't think the Court, certainly at this juncture, having confronted this issue for the first time, should be prepared to decide that it's vague. We haven't made an argument. The government doesn't even make a constitutional avoidance argument. I think what led the Court to decide that the residual clause of the ACCA was vague was largely the fact that you were trying to hypothesize a sort of generic version of a crime that just didn't exist. Here we're dealing with a specific defendant's conduct. Just to return to Petty for a moment, I think it's key for a couple reasons, one of which is the fact, and not to put too fine a point on it, but the one thing we all agree that Congress was trying to do by enacting the Occasions Clause was to make sure that Samuel Petty and people like him would not be career criminals, and under the government's test, Samuel Petty would be a career criminal. But I think the Solicitor General's confession of error contained an argument there that was inconsistent, not just with the government's simultaneity test on steroids, but even with the sort of more overlapping sense that the Courts of Appeals have been applying. Because the Solicitor General in that case pointed to State cases that rejected enhancements in situations no different from this one, including the Tavares case, which involved two burglaries on the same day. There is no way that the Solicitor General would have pointed to those cases as a proper application of enhancement statutes if the Solicitor General believed that the only thing that mattered was whether they overlapped. Did you get anywhere with episodes? Pardon? Did you get anywhere with episodes? I mean, suppose we tried to work with that. I think episode is a really intuitive way to put it. It's in our question presented. We use the phrase dozens of times in our briefs. I think put in that terms, it's even clearer that the mini-storage break-in was a single episode for the same reason that the diner robbery was. So in your view, are we better off assuming you win this case? Just saying, look, they were the same episodes. It was one episode. It's like Jesse James robbing a single train, okay? And using words like that or same occasion. Yeah. And not try to go further. Or would it be better to try to go further and talk about the time and the simultaneous event and so forth? So I think it would be certainly appropriate to say what you're looking for is a single episode, and you're not focusing on whether crimes are simultaneous or overlapping and certainly not whether the final offense element is satisfied at the same moment. And I don't think you need to go any further and just apply that to the obvious facts on this case and say this was a continuous stream of criminal activity. The same acts were making up various offenses. It's just like petty. It's the same episode. I want to go back to the dark night. The mood is not out. And anything the guy does that night is one episode? I don't think necessarily. Or anything he does outside, I guess. So knowing nothing else other than what you've said, I don't think the government would have sustained its burden if all it can say is there were various activities outside at night on a moonless night. I think the government would have to point to some other discontinuity in addition to that. So that qualifies the fact, I guess, how many, what do you have, two moonless nights a month? That would be a juncture of circumstances giving rise to an opportunity? You know, it really depends on whether the crime was in fact facilitated by that moonless night or at least, you know, that is an element of the crime. It's dark. Everything is outside. And he, you know, mugs somebody, you know, robs somebody else. Everything that's easier to get away with in a dark night than during the day. So to me, that seems like a single episode and a single juncture of circumstances. You don't have to agree with me. What are the circumstances? Sure. So, I mean, it sounds like you are positing crimes that are facilitated both by being outside and being outside on a moonless night. So those are two, the two outside, moonless night? And from what I took from your hypothetical, again, just going on what you've given me, is that the criminal is lying in wait for whoever walks by. But, you know, again, you might posit additional facts that might change the circumstances. This case, though, is the molten core of a single episode. And we would urge the court to decide at least that much. What is the definition of an episode? So episode is related activities or events that are separated from others by a discontinuity or clean break. What's the molten core of an episode? So the molten core of an episode, Justice Kagan, involves continuous criminal activity where literally the same acts are being used in furtherance of multiple crimes. Justice Thomas? You criticize the government's test as being incompatible with the categorical test. How is yours compatible? And how would you use it? So I don't think the categorical approach applies to the occasions clause, because you have to look not at some generic version of a crime, but the way that the defendant actually committed their offense. What we were — if I could just add one more point. What we were arguing is that the government's test cannot be applied based solely on elements as far as we can tell to any crime. That's what we were arguing. How would that work in one of these cases practically? Would they have to — would we have to have a separate hearing? So my understanding, if you're asking about the way things currently work, is that sentencing judges do this. Sometimes there might be a hearing, but in general they do it as they do regular ACCA sentencing. So you risk — do you risk running into a Sixth Amendment problem? As I understand this Court's Sixth Amendment jurisprudence, I think there is a concern, but it's not directly at issue in this case. That will be your next case. I hope so. Justice Breyer? Justice Alito? Well, I do have, actually. I mean, the thing that's puzzled me in this is it sort of works backwards in some instances. Imagine the drug lord that Justice Kagan was talking about, or the equivalent, and he gets a plan that every third day he will sell drugs, and it's a unified plan of great complexity involving delivery and where you go and the car and all that kind of stuff. And he writes it all down on a single piece of paper. Now, there we have what seems like a single plan. But the assistant, all he gets — or on Tuesday go here and pick up the drugs, and on Thursday you go here and pick up some others and so forth. So it looks like he's done a bunch of things. So the worst guy gets the better sentencing treatment, and the better guy, a little better, gets the worse sentencing treatment. Hmm. But maybe that's what you say, because you say this part of the sentencing law isn't concerned with that kind of worse or better. I'm just saying what's going around in my mind. I think you could say that, or you could say that each criminal associate is responsible for the behavior of the others. And so it doesn't really draw a distinction along those lines. All right. Justice Gorsuch. Thanks, Chief. So the dark and moonless night hypotheticals are hard. They are. And you've done your best with your totality of circumstances. But often, I think, if we're candid, we probably would all admit that it's going to run out at some point, and there's going to be some close cases beyond the molten core. What role does lenity have to play in those circumstances, in your view? Why should the tie go to one side or the other? So I candidly acknowledge that members of this Court have different attitudes towards the role that lenity should play. I think at a minimum, it should incline you to choose a plain meaning over a hypertechnical meaning, and especially so in a case involving mandatory minimums of 15 years to life. That's my second. So we have a lenity as a tie-breaking rule. Does it have particular purchase in a case, for example, here where mandatory minimums are sometimes invoked by the government? In this case, it wasn't initially. And then later are, and it can be as a matter of policy. Does that raise fair notice, separation of powers concerns in your mind? I agree. I agree with all of that. And, you know, Justice Breyer has written, and we quote from an opinion of his pointing out that when you're dealing with a mandatory minimum, you're dealing with a situation where no matter what, the judge just has no ability to account for the circumstances. And I think lenity should incline you against that sort of punishment, whereas there's a sort of asymmetry for a zero to ten, you know, an up to ten maximum sentence where the judge can take those things into account. Now, does that have some relationship in your mind to the major questions doctrine? I feel like this is a law school exam. You know, I think we should be extraordinarily reluctant to think that Congress has decided to make so much time of a person's life turn on something that is so hypertechnical or such small distinctions like small moments in time and the distinctions between offenses. Thank you. Justice Kavanaugh. No further questions. Justice Barrett. Thank you, counsel. Ms. Ross. Mr. Chief Justice, and may it please the Court. Contrary to petitioner's suggestion, the government's rule is faithful to the text and it does not depend on synchronicity between the final elements of different crimes. Rather, two crimes are committed on occasions different from one another when their essential conduct elements are satisfied by different acts. That reflects the statute's text. If the same act satisfies an element of two different crimes, then the commission of each offense is not a different occasion. That is, a different event, occurrence, or happening. The government's test also furthers the statute's purpose because it separates defendants who have been held criminally responsible for multiple discrete acts from those who have been held responsible for a single act that resulted in several statutory violations. Now, I agree with my friend that in the vast majority of cases, we can decide this question pretty easily. On our test, they can be resolved by a simple rule of thumb. If one offense is over before the next begins, then the two are committed on different occasions because their essential elements are necessarily accomplished through different acts. Two examples illustrate the point. First, if a defendant burglarizes ten houses on the same street, those are necessarily ten different occasions. He could not have unlawfully entered each home through one act. And he had the choice not to commit another crime between each one. Second, if a defendant robs ten people in one place with the same stick-up as in petty, that one act marks only one occasion. As I think has become clear this morning, petitioner's freewheeling approach would be much more difficult to apply. He would require courts to seek to identify the juncture of circumstances that gave rise to the relevant criminal opportunity. But none of that language is in the text. And petitioner's rule would require courts to examine granular facts that state court records often will not include. Petitioner's approach also would yield inconsistent results. Different judges will have different intuitions about when one occasion ends and another begins. This Court should reject petitioner's invitation to uncertainty and inconsistency and affirm. Ms. Ross, is there any way using either your test or petitioner's test to avoid fact-finding that seems to run the risk of involving us with the Sixth Amendment? Yes, Your Honor. I think that our test does avoid that, and I would appreciate the opportunity to explain why. In this case, all you need to know is the elements of petitioner's offense. There were ten burglaries. Burglary necessarily requires an unlawful entry or remaining in of a structure. If petitioner had said, in fact, these were all one burglary, the court would be able to look at the indictment and say, you know, yes or no, based on are they different structures, or if it's one structure, are they different times. So it's the same types of facts that we think, first of all, are inherent in this crime and the elements of burglary, but also that courts could look at in a double jeopardy context. And I think no one thinks that that raises a Sixth Amendment issue. I think, you know, burglary is perhaps the easy case because you do need this unlawful entry of separate structures, but I think the vast majority of these cases come up in the robbery or the burglary context. And if you look at robbery, for example, again, you might have a case like Petty where there are six victims in one place, and you don't know from the face of the indictment or the other Shepard documents whether the act was actually two separate robberies where, you know, the gun is pointed at one person and the gun is pointed at the other. If that's the case, we're just going to lose that case on the face of the Shepard documents. So I don't think you're getting into the facts. I think, by contrast, if the indictment says, you know, there are two robberies on June 20th, we have Jones and we have Smith, but it also says Jones was at, you know, 1030 Northern Boulevard and Smith was at 1050 Northern Boulevard, we're going to know that those are two separate occasions. And again, that's the kind of fact that I think judges can rely on without contravening the Sixth Amendment. It's the kind of fact, for example, that if it had changed between the indictment and the jury trial or the conviction, you would think there would be a constructive amendment problem, for example. So I think these are sort of the types of facts on our view that you can look at. Now, of course, if Petitioner were to prevail in this case, the government is not saying that there would necessarily be a Sixth Amendment problem, but I think to the extent that there is a Sixth Amendment problem, there is a problem that we can solve by choosing to replace those, whereas Petitioner's does, as various questions have revealed this morning, exacerbate those concerns. So what we would do is look back. I'm not quite sure how far back. And just ‑‑ it's very simple, right? Compare the elements of the two different crimes that are alleged to have occurred on the same occasion or a different one. And apparently, each of the 50 states have different views of what constitutes an element of some particular time, or at least they're not uniform. And, of course, we would have to look at each one to see if it's a different occasion. And I guess at some point we'd have to figure out what documents we look at in determining whether a particular element was present. And that, you say, will avoid inconsistent results across the country. Are you really sure that might be what happens? So, Your Honor, a couple of points. I think first off, of course, these have to be sort of generic burglaries or generic ‑‑ or have an element of the use of force or, you know, they have to fall within the ACCA to begin with. So I don't think you're actually looking at the burglary elements per se, because we know for generic burglary law that you need the unlawful entry or remaining in, and we know from a double jeopardy perspective that if you have, you know, one time, one structure, that's going to be one offense. So I think it's maybe not quite as complicated as you suggested. I think in terms of how consistent this will be, you know, I do think it's the government's burden, and I think where the documents, and in particular we think most of these cases, again, because they tend to arise in these sequential robberies, sequential burglary contexts, are going to be easily resolved on the indictment. I think at a maximum you would be looking at the other Shepard documents. And so I don't think that the Court needs to recreate the wheel here. I do think, again, that, you know, our approach has those benefits of administrability where, as I do think petitioners approach, you know, even if you get past what I think are the textual problems with it and the contextual problems with it, meaning that the ACCA is obviously a statute in which Congress did not want judges sort of sifting through a voluminous State court trial record trying to figure out exactly how a crime happened, much less the surrounding circumstances. Well, we're talking about an extra 15 years based on, for example, conduct in this case where they're in the storage facility and they're just kicking down the walls to go from one to another. I think it might require a more careful examination of the different elements than you suggest. So, Mr. Chief Justice, you know, I respectfully disagree. I think the fact that State law treats these as separate locations, separate structures for purposes of burglary, you know, petitioner could have an argument that that's wrong as a generic burglary question. This Court is certainly familiar with cases construing, you know, what is and isn't a structure for purposes of burglary, but that's not his argument. So his argument is that, yes, these are separate burglaries under State law, and I just want them to be one occasion because these happen to be attached to each  I think judges' intuitions are going to differ on that. And if you imagine, you know, this case is not so different from, you know, the apartments that are next door to each other and are burglarized, the row homes that are next door to each other and share an adjoining wall and they break through the wall, you know, then you have to distinguish the houses that are on the same street, you know. Is it enough if you go to the next town? Where do you draw the line? And I think what Congress would not have wanted in this area where, as you correctly note, there is a significant mandatory minimum sentence is it being entirely dependent on a judge's intuition about how far is enough or how long is enough. Kagan. Ms. Ross, could I make sure I understand your argument? Because, you know, to be frank, I read your brief in the way that Mr. Kedem read your brief, that the question is when was the – when did the commission of the crime take place? That is, when was the last element satisfied? Now, you're saying that that's not your test and that your test is some more – some looser understanding of what sequential activity is? Is that – is that right? No, Justice Kagan. So we are saying – so partially, yes. We are saying that it is not the final element. When we said the elements are completed, what we meant was you're looking at the period of time during which people are committing the elements of the offense, that that is how you know sort of what an occasion is. It is bounded in a time sense. So in Petty, when they go from person to person to person to person and they take each person's goods, you say that still counts as one occasion. That's correct, Your Honor. And the reason – And then the question is, when you don't go from person to person to person, but instead you go from storage to unit to storage to unit to storage to unit in a single facility, why isn't the same true? Sure, Your Honor. So I want to clarify our position with respect to Petty. I think the thing that makes Petty one event and one act is that there is an overlapping – as I think I heard my friend say this morning, there's an overarching use of force there. When you go in as a robber and you say – you know, you put up your gun and you say, give me all your money, they then subsequently maybe have to go person to person. But they are sort of already in. They've already committed part of the act of burglary – or, excuse me, robbery, one of the essential elements. But didn't Mr. Wooden basically already commit to going into the storage facility and then he goes to this box and this box and this box? So I don't think so, Your Honor. I think both as a matter of law but also as a matter of fact. So as a matter of law, obviously, as we've talked about this morning, the State simply treats those as separate burglaries. That is a separate entry. As a matter of fact, I think that makes significant sense. Every time Mr. Wooden and his confederates chose to break down another wall is another decision to break the law. It is another moment where they said, you know, that was fun, let's do this again all the way up to 10. And I think that is very different from the simultaneous robbery situation where a defendant raises his gun once and he's committed at least – How do you know this? How do you know this? I mean, what we have is a piece of paper, 15 years old or 10 years old, and it says on it, pled guilty, charged robbery. Okay? And I have no idea what went on, nor the judge. And judges all the time have to decide things like this under the guidelines. And so what you're saying is that Jesse James, who I know what he did because I've seen movies, all right? So Jesse James gets on the train and he goes to one person and then the next person and then the next person takes their stuff, you know? And the next car and the next car and the next car. Yeah, correct, correct. And moreover, you're going to put him in jail for 15 years, or maybe he deserves it, but his cousin Harry James only robbed one car and one train once, but there were four people on it, and then he gave up his life of crime. And you're saying not just Harry, but also – not just Jesse, but Harry, too, will be 15 years in jail extra. Now, if you can convince me Congress intended that at the same time that they passed this – the sentencing guidelines, I'd like to hear it. Sure. So two responses, Your Honor. The first to those particular hypotheticals. I think this points up a problem in any time you're looking at past convictions. And so I think what is going to happen is if all you have is Your Honor's example of the indictment that says robbery, X date, we're just going to lose that case.  Why are you going to lose it? Because we don't think that you go beyond basically the basic facts, the core elements of the offense. Oh, you said just as one. But if this actually says – you know, you see the indictment, and maybe you see that, maybe it says there were 10 people. It says five people. It lists the things stolen. Joe Smith's watch, et cetera, et cetera. Right. So again, we're not going to know whether it was a petty situation where they just held up their gun all at once or whether they went person by person, and so we're going to lose that case. Why? Why? Most robberies where you'd go through the train, you would assume – it says train robbery – you would assume that the guy in car two didn't see a gun in car one. He just saw a guy with a mask. So I'm not quite sure if I'm following why that would be different. Forget it. Forget it. I'm going off too far. Go ahead. But in terms of what Congress intended here, you know, I think that Congress very reasonably determined that the person who commits what State law has considered to be a full offense, a complete offense, and what Congress has in turn considered to be its own violent felony and turns and does that multiple occasions without – you know, whether they take a smoke break or not in between, is a more dangerous person than the person – Counsel, that was the law before it was amended, and it was harsh, but it was clear. So you commit three robberies, it's three strikes, okay? But then it was amended. They add the term occasions. I have no idea what an occasion is or what a criminal opportunity is or what a criminal episode is. But you have a real problem, I think, with petty. So let's say that there are three people in a car driving on a dark night out in the middle of nowhere, and they see a hitchhiker. They're kindhearted people. They stop to pick up the hitchhiker. The hitchhiker pulls a gun, points the gun at the first person in the car, and says, give me your money. The person gives him the money, and then he says, walk off. And so he's done with that person. Then he robs the second one. Same thing. Walk off. Robs the third one. Walk off. Is that one occasion or two occasions? Is that petty or is it this case? So I think that that is this case, but I think it is very likely that you are not going to know from the record documents and that we would, as I keep saying, perhaps oddly, we are going to lose that case. Now, if I could go back to what Congress had in mind with the money, I think it's Well, let me just say that the difference between that situation and petty seems to me utterly inconsequential. How can it possibly be that you have different results in those two instances? So I think because Congress decided that somebody who, again, commits a full violent felony and then goes and does another one, no matter how close together they are, that that is a different type of person. And when Congress amended the statute in light of petty, it responded specifically to petty. It did not respond to other cases. I would direct this Court to the Ninth Circuit's decision in Wicks, which was multiple Congress didn't seem to think there was a problem with that. Congress instead tailored its response to the petty situation. And I think this brings up an important issue, which is even on Petitioner's side of the purported split, I think courts are drawing these distinctions very similarly to how we would do it here. So the Second Circuit's decision in Bordeaux, those were three robberies that occurred at 10, 10.15, and 10.55 p.m. The Court held that those were separate occasions for purposes of the ACCA. So I think to the extent that the intuition is, you know, if it happens close in time, it just can't make a career criminal. I think because Congress didn't adopt language that required an intervening arrest or a certain amount of passage of time, no one's test really gets to that point. And the question is, you know, how can we do this in a clear and administrable way that distinguishes between the people who commit one violent felony and the people who commit one and then just keep going all the way up in this case to 10. Well, if all there was, was Justice Breyer's hypothetical, but I'll adopt it to this case. If the only criminal activity by this defendant his entire life had been the burglary of this warehouse, the burglaries of this warehouse, and sometime later, 20 years later, and I don't remember how many years separated these two cases, he commits another criminal activity. Do you think the lay person would believe that that was a career, that this person was a career criminal? Under what understanding of episode or occasion would a common person walk away and say, nope, those were different occasions. And so yes, even though that person has only had one episode, one evening of burglary, he's now a career offender. That's the only background. Justice Sotomayor, I think there are sort of two questions in there, and if I could tease them out. I think the first is, you know, would you call this person a career offender? And I think we know that Congress, for all the reasons I was just saying, thought of career in a different sense than a lifelong pursuit, because in response to Petty, and second, in response to Petty, it didn't require intervening arrests, it didn't require intervening convictions, despite the fact that other statutes do have that type of language. Well, that's true, but intervening arrests or conviction can let somebody live a crime-free life for years. And still, they're still a career offender because they can commit a crime a month or a crime, even under your theory, a crime of the year, and they would be a career offender. They don't necessarily have to be arrested. That's correct, Your Honor, but Congress also did not include, you know, three years between convictions, five years between convictions, anything of that nature. And so I think we know that Congress meant career criminal in a different way, and in the way that is, in fact, explained in the text with respect to the different occasions clause. I think the only clear way to understand the different occasions language, and this goes to the second part of Your Honor's question, is that an occasion is an event, a happening, or an occurrence, and if two events share one essential act, they are really one event. That is our position. Well, but think about this factual context, right? Let's say you're a newspaper reporter and you're trying to write a story about what happened here. Would you ever say something like the facility's storage units were burglarized on 10 occasions? So, Your Honor, you know, I think you could say, you might well say, they broke through drywall on 10 occasions. I think it just, you know, there are ways to think about this. But that's, breaking through drywall is not the relevant act. The relevant act is a crime. So, actually, respectfully, Your Honor, I think breaking through drywall is the relevant act because you need, under state law, to have an unlawful entry into each of these separate facility or units. Well, then, to use Mr. Kedem's words, it's just becoming very hyper-technical. In a normal sense, if you look at what this guy did, you would say, he, you know, broke into the storage units on one occasion. Whereas, maybe if there had been 10 separate, separate meaning, you know, it happened on Monday, and then it happened on Wednesday, and then it happened on Friday, then you would say the storage units were burglarized on 10 occasions. So, I disagree, Your Honor. I mean, I think even taking my friend's definition of occasion as a different juncture of circumstances giving rise to a different criminal opportunity. You know, every time Mr. Wooden decided to go into a different unit to steal different items from different victims, I would think of those as a different occasion. But, you know, if the point is, ultimately, On one occasion, Wooden burglarized one storage unit. And on a second occasion, he burglarized another storage unit. And on a third occasion, he burglarized another storage unit. I mean, that's just not how anybody would talk about what happened here, is it? So, I think it might well be. But if I could give you another example, Your Honor, I mean, I think if I said, you know, during my friend's argument, he was asked difficult questions about line drawing, you know, on several different occasions, or on several occasions different from one another. Even though those happened very close in time, that would be a perfectly natural use of language. You know, at the same time, if Mr. Kedem stood up here during his rebuttal and said, you know, during her argument, Ms. Ross committed errors on several different occasions, I would disagree. But not because it's not a natural use of language. I think you can use occasion in different ways. And what we're wondering about here, or asking about here, is how it is best used in the context of the ACCA. And I think in a statute, I'm sorry. So, Ms. Ross, if I didn't mean to interrupt, are you finished with your answer, Justice Kagan? I had one more sentence. Go for it, please. I was just going to say, in the context of the ACCA, where we know that Congress did not want, as this Court said in Taylor, you know, if we thought that sentencing judges were supposed to be looking through facts and circumstances, we would see some indication of that. I don't think that this reading of occasion that my friend is offering is a natural fit in this context. Just, I wanted to follow up on what Justice Kagan was pursuing. And petty is still one occasion in the government's view today. Yes. Okay. What if instead of, in petty, instead of robberies, we had murders, and a guy breaks in and shoots three people in a row? Is that three separate occasions on the government's view? Yes. Each of those offenses requires a different use of force. So the exact same, so a normal person wouldn't say that happened on one occasion, even though the three people were in the same room, but because they were murdered sequentially, that's not one occasion. That's three occasions. I think in the context of this statute, that is one, those are three occasions. But if they commit robbery, one after the other, in the same room, that is one occasion. No, Your Honor, because the robberies, so it might be true. Because the robbery starts as soon as he shows his weapon to everybody in the room. And therefore, it's one occasion when it's robbery, right? But three occasions when it's murder. I think that is simply a consequence of the elements of robbery. Who thinks that, Ms. Ross, in the real world? So, Your Honor, again, I think that there are multiple ways in which one could look at the way that we apply the ACCA. And if there are multiple ways to look at it, why doesn't lenity play an important role here in determining whether the government should win or lose these cases? If an ordinary person can't tell, if there are multiple ways to read the statute, if an occasion might mean one thing if it's murder and another thing if it's robbery, why doesn't the tie go to the presumptively free individual rather than the prosecutor, especially when we're dealing with mandatory minimum when the government changed its mind? So there's a lot packed in there, and I want to get to all of it. Sure is. Go for it. So I disagree. I was not trying to say that, you know, occasion might mean one thing in robbery, might mean burglar, a different thing in murder. But I was trying to say — But they are in the hypothetical. No, Your Honor. Hold on. I thought it was three occasions with the murder and one with the robbery in  Yes. But in either case, the reason why is because of the elements of the offense. And so I think it is entirely consistent to say that when you have — just as if you had the murders of three people by a bomb, that would be one occasion. To get to the lenity question, you know, I think that Congress was clear here, especially in the context that I was explaining. And I think, as you note, when we are applying a mandatory minimum, I think it's very important to have consistent results. And as the questions this morning suggest, I don't think that Petitioner's test is going to get you consistent results. Again, I don't know if Petitioner agrees with the cases on his side of the aisle, but I'm not sure of how — But if we don't think yours leads to consistent results either, for example, because of the hypothetical I gave you, then what? So, Justice Gorsuch, to be clear, I think in the — so there's sort of the theoretical and then there's the how is this going to play out in practice. No, no. No, no, no. If we think that there's ambiguity either way, okay, if we think that there's going to be confusion either way, then what? So I don't think there is going to be confusion. I understand that, counsel. I've been there. I've fought many a hypothetical, too. But just suppose we think that, then what? So I think if you thought there was going to be ambiguity either way, you would still need to look for the best reading of the statute. We think we've given that to you in context. I think if you got to the point where all of your tools of statutory construction ran out and you found grievous ambiguity, then yes, there might be a lenity issue. Okay. Counsel, has any of the lower courts adopted your elements-based approach? So, Your Honor, I don't think they've talked about it in terms of the elements, but our results are consistent across the board, I think, with the vast majority — Well, if their test was, in fact, based on the elements, presumably they would have talked about elements, right? So I think the — so, you know, I take the point. I don't want to fight that. You know, I do think that the difference is that these cases generally come up in these sequential robbery, sequential burglary contexts, and there, it is enough to say one was over before the next began in the same way that I started this morning, without having to really go into, you know, what that tells you is that the elements were committed at different times, and what that tells you is that they were all different acts that satisfied those elements. So I think we have sort of provided more theory as to why that common-sense intuition as to one is over before the next began makes sense. But, no, I mean, they haven't exactly mapped it onto the elements in the same way that we would. You know, there are a couple of other things that I think it's important to get to here. You know, as I think we've talked about a bunch this morning, we think petitioner's test is not going to be very administrable in practice, even if you get past the textual problems that we see with it and the contextual problems that we see with it. You're going to have three problems. First, you're going to have judges looking for facts that are not often going to be in state court records, not just about how a crime was committed, but about all of the surrounding facts and circumstances. Second, even if you had perfect information, you're going to then have to look at it at this granular level that, again, in the ACCA context, for many of the reasons various justices have raised this morning, we don't permit. And third, even then, I do think you're going to have these very difficult line-drawing questions between, you know, the smoke break or the 10, 1015, 1055 robberies, as opposed to what Mr. Wooden was convicted of doing here. I think what the law ultimately is asking about in the ACCA is, were you held criminally responsible for discrete acts? And that is the case here. It was not the case in Petty. And so I think that our test is far more administrable in practice. You know, I think there were a couple of other small things. You know, I think the crime boss hypothetical that Justice Kagan gave, I think, explains why we think that, you know, disparate timing is sufficient but not necessary. I do think that intertwined simultaneous offenses may be separate occasions. I think I took my friend to agree with that. Excuse me, non-intertwined simultaneous offenses may be separate occasions. I think I took my friend to agree with that. We also think that, you know, there was some suggestion, I think, in some of the questioning about accomplice liability. Again, because we would just focus on the elements of the offense, we would not look to that further complication. So I'm happy to answer other questions. Justice Thompson? Ms. Ross, I have one question. If we conclude that someone who goes down the street and burglarizes different houses and different cars going down the street, that that's all one occasion, if that's our common sense intuition, to borrow your phrase, you would disagree with that, correct? Yes, I would. Okay. Suppose that's what we think, though. Do you have a backup position on how you would articulate the test? So, Justice Kavanaugh, you know, I think once you go beyond, you know, the timing of or the acts that are required for particular elements to be completed, I think it gets very difficult to articulate a clear test, as I think this morning has sort of revealed. You know, I think, obviously, larger periods of time are clear, but I don't know that you can really get that from the text. So, you know, I apologize. I think we've given you the best and the most administrable reading of the test. And I do think once you get to the, you know, if you would sort of think that the guy down the street is a different occasion, I think it's very hard to understand why this would not also be a different occasion. Thank you. Justice Thomas. Justice Breyer. Just a moment. Yes. Quick question, Ms. Ross. So if we do disagree with you, and you indicated you thought it got pretty complicated pretty quickly, do we run into vagueness issues? Sure, Your Honor. So, you know, we don't think that the statute ultimately would be vague. We hope that what would happen is that the courts of appeals would continue to apply the types of factors that they have applied. We think we win under those factors, but I think, you know, if it were just a question of sort of tinkering with those factors, I don't think that there would be a constitutional vagueness problem. I do think to the extent that you have vagueness concerns, again, our approach, much as in the Sixth Amendment context, mitigates those concerns, whereas I think Petitioners, you know, as I think my friend admitted, it sort of sets up the next question. I understand. Counsel, I understand that point, but I have one more quick question. I don't want to monopolize the time here. On the Confrontation Clause question, again, if we do disagree with you and we think that occasion is broader than you suggest, does that raise Sixth Amendment concerns? Justice Gorsuch, you know, I think it would, again, depend on exactly what the court said. You know, we think that we could apply this in a way that is consistent with the Sixth Amendment. Again, I think it would just require sort of looking at a narrower set of facts and documents. Thank you. Justice Kavanaugh? No further questions, Chief. Thank you. Justice Barrett?  Thank you. Rebuttal? With the greatest respect to my friends from the government, the essential elements test that you just heard Ms. Ross articulate strikes me as dramatically different both from what the courts of appeals are doing right now, but also the way that the government described its own test in its brief. First of all, Justice Kagan, I think the reason that you and I both read the government's brief is saying the question is whether the final element was satisfied at the same moment comes from sentences like this on page 15 of the government's brief. In common legal parlance, an offense is generally committed when all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct. There were a number of such sentences, all of which seemed to point to the final element. The question, a test described as an essential elements test raises for me a number of questions. First of all, are there elements of an offense which are not essential? For instance, mens rea. Mr. Wooden and his associates may have formed the plan to break into the mini storage facility and to steal what was ever there, and it was a single intention that they formed with respect to all of the different units. Does that count as the same or is that different? What about inchoate crimes? Attempts are named by statute in the Armed Career Criminal Act. They are called out by name, but you never complete the crime. You need a substantial step. Are all of the acts that go toward the substantial step part of it? What about crimes where you are simply facilitating crimes by other people? These are all questions that are entirely unanswered. Now, with respect to the court of appeals approach, my friend, Ms. Ross, said that she thinks that this is essentially what the courts of appeals are doing. That is not correct. Under the courts of appeals test, what needs to happen is the beginning and end of one crime have to be separate from the beginning and end of the next crime, regardless of whether the same acts go into multiple crimes. And let me give you three examples that come from our brief. There was the case Barber about the robbery outside the mini mart, and then some members of that robbery went inside to continue to do a new robbery within the mini mart. So there are two separate robberies. But what the court of appeals said is because the robbery outside continues, continued while the one inside the mini mart was going on, they overlapped, and therefore it was the same occasion. But under the government's essential elements test, it would have come out differently. So, too, for the case of Tucker, where there were two people who burgled two separate storage units, but since the court didn't know whether they both walked into their storage units simultaneously or went from one together into the other, they didn't know whether the crimes overlapped, and therefore it was one occasion. And similarly, the Murphy case involving a duplex, where some number of people stayed at the first unit while the others went to the second unit, that would have come out a different way under the government's test. The government's test would also mean that acts that are truly simultaneous can also sometimes be different occasions. For instance, if you and an associate decide that you will both walk into separate storage units at the same time, I think under the government's test, that is two different occasions, whereas the courts of appeals would treat those as the same. Now, my friend also raised the possibility that their test would be more consistent with the Sixth Amendment because it is just a focus on elements. But assuming that the government agrees that you are always responsible for the conduct of accomplices, since we don't know how many accomplices are involved in any crime, it is never elemental as far as we're aware, and the government doesn't suggest otherwise. You will never know, just based on the elements alone, whether or not the crimes were committed at the same time. The one textual point that my friend from the government made, at least as far as I recall, is that if you were to break through ten different units, the drywall connecting them, you might describe that as ten different burglaries, or you might say that you broke through the drywall on ten different occasions. But again, she's loading the dice by phrasing it a different way than the statute. What the statute says is, we know there were multiple offenses. Now we ask the question, on how many occasions did that occur? Was it the same occasion or different occasions? So to put her example in the phrase of the statute, what you would say is, you broke through the drywall ten times. Did that happen on the same occasion or on occasions different from one another? And our simple submission is you would never describe that as ten occasions different from one another. And finally, let's talk about Congress's goals. It is unclear what the government's essential elements test has to do with any goal that Congress might have cared about. And one would think that if this was the test all along, someone at some point would have mentioned it. But obviously, Congress, no one in Congress said so. No court has ever articulated it this way, and the government didn't even articulate it this way, at least as far as we're concerned, until oral argument. If there are no further questions. Thank you, Counsel. The case is submitted.